## Harvey, Appellant, *v.* Weitzenkorn.

*Practice, C. P.—Affidavit of defense—Corporations—Subscriptions to stock—Cancellation—Appeals.*

1. An order discharging a rule for judgment for want of a sufficient affidavit of defense will not be reversed, except where a pure question of law is raised and clear error has been committed.

2. A ruling of the court below discharging a rule for judgment for want of a sufficient affidavit of defense in an action by a trustee of a bankrupt corporation to recover the amount of a subscription to its capital stock will not be disturbed on appeal where the affidavit avers that the defendant's subscription was conditional and made under a collateral agreement by which he was allowed three months in which to decide whether he would take the stock, and that after he had declined to take it, the corporation "by its constituted authorities" canceled the subscription while still a solvent, going concern.

*Corporations—Stock—Subscriptions to stock—Cancellation—Contracts.*

3. A contract of subscription to stock, like any other contract, may be waived, canceled or dissolved by the mutual consent of all the parties interested.

Argued April 12, 1911. Appeal, No. 50, Jan. T., 1911, by plaintiff, from order of C. P. Luzerne Co., Feb. T., 1910, No. 602, discharging rule for judgment in case of Olin F. Harvey, Jr., trustee, Dion Manufacturing Com-

pany, bankrupt, v. Joseph K. Weitzenkorn. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCH-ZISKER, JJ. Affirmed.

Assumpsit on stock subscription. Before McCLURE, P. J., specially presiding.

Rule for judgment for want of a sufficient affidavit of defense.

The material portions of the affidavit of defense were as follows:

Defendant avers that prior to July 16, 1907, the date set forth in plaintiff's statement of defendant's purported subscription of shares of the capital stock aforesaid, he was approached on two separate occasions by W. E. Steelman and H. B. Payne, who solicited defendant to become a subscriber for said stock; that on both occasions he refused to subscribe and told said Steelman and Payne that owing to alterations and changes then in contemplation and being made in the business establishment of his firm, which required a large outlay of money, it would be impossible for him, the defendant, or his partners to subscribe for any stock; that on July 16, 1907, Messrs. Steelman and Payne again solicited defendant for a subscription and he again refused, repeating to them the reasons therefor; that Mr. Steelman, who represented himself as vice president and general manager of the Dion Manufacturing Company, then stated that they wanted defendant's subscription to the stock for the influence his name might have towards helping them to get other subscribers, and proposed to defendant that he should subscribe conditionally and if he decided later on that he did not want the stock, the Dion Manufacturing Company would release him, the defendant, from any obligations and permit him to cancel said subscription without cost to him.

Defendant then stated to Steelman and Payne that if the proposal last aforesaid was put in writing he would agree to subscribe upon the conditions named. On the

same day defendant received from said W. E. Steelman, vice president and general manager of the Dion Manufacturing Company, a letter in words and figures following:

"July 16th, 1907.

"Mr. Joseph K. Weitzenkorn,
    "Wilkes-Barre, Penna.
"Dear Sir:—

    "Confirming our verbal proposition of this morning,, we beg to advise that we will take your subscription to our capital stock and if at the expiration of three months you decide that you cannot take the stock subscribed for, we will release you of the obligation without cost to you.

    "Thanking you for any consideration you may give us, we are,

                "Yours very truly,
                    "Dion Manufacturing Company,
                        "(Signed)      W. E. STEELMAN,
                            "Vice Pres. & Gen. Mgr."

And thereupon he, the defendant, subscribed for fifteen shares of the stock aforesaid, said subscription being made by the defendant upon the expressed condition named in said above quoted letter, it being fully understood and agreed between said Steelman and himself that the said subscription should not become binding and effective unless it was subsequently ratified and consummated by the defendant in accordance with the terms of said written proposal.

Defendant avers that afterwards no further communication was had between himself and anyone else in relation to the matter until on October 18, 1907, he received a letter from the Dion Manufacturing Company in words and figures following:

"October 18th, 1907.

"Mr. J. K. Weitzenkorn,
    "No. 4 S. Main St., City.
"Dear Sir:—

    "We hand you herewith notice of your subscription to

the capital stock of this company, and will appreciate it very much if you will send us a check for the same.

"We are operating our plant, and need the money in order that we may put our product on the market.

"Yours very truly,
                "Dion Manufacturing Company,
                    "(Signed)      E. C. WAGNER,
                                    "Treasurer."

~ That immediately upon receipt of the letter last aforesaid he replied thereto in a letter to Dr. E. C. Wagner, treasurer (a copy whereof is hereto attached and made part hereof), wherein he declared his decision not to take the stock conditionally subscribed for, and asked that his name be stricken from the subscription list.  And defendant avers that from that time on up to May 25, 1909, when he received a letter from O. F. Harvey, Jr., which letter was in words and figures following:

                                "May 25, 1909.
"In re Dion Mfg. Co.
"Joseph K. Weitzenkorn,
    "Weitzenkorn Bldg., City.
"Dear Sir:

"I was duly elected trustee of the Dion Manufacturing Company, Bankrupt, and upon going through the books of the company, I find that you made a subscription to the capital stock of the company in the sum of fifteen hundred (1500) dollars, which has not been paid.

"As this is an asset of the company, I am obliged to call upon you for payment, and trust that you will favor me with your check at an early date for the above amount.

"Yours very truly,
                "(Signed)      OLIN F. HARVEY, JR."

No demand, verbal or written, of any kind or character, was ever made upon him for any payment, nor was notice of any call or assessment upon such subscription of stock ever given him by the said Dion Manufacturing Company, or anyone representing or claiming to repre-

sent said company; that he was never notified to attend a meeting of the Dion Manufacturing Company; never did attend any meeting thereof; never had any knowledge of its business, and never at any time regarded himself, nor was any notice brought to him that he was regarded by said company, or its officers, as a stockholder thereof or therein.

And defendant further avers that he had been informed, verily believes and expects to be able to prove upon the trial of this cause, that the Dion Manufacturing Company by its constituted authorities, upon receipt of defendant's letter declaring his decision not to take the stock thus conditionally subscribed for, canceled the said subscription, and while a solvent going concern, never entered the defendant's name upon its books or account as a subscriber, or treated said subscription as an asset of the company.

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Andrew Hourigan,* with him *Thomas Butkiewicz, Jr.,* for appellant.—A subscription to a joint stock is not only an undertaking to the company, but with all other subscribers. Such contracts are trilateral, and even if fraudulent as between two of the parties, they are to be enforced for the benefit of the third: Graff v. Pittsburg & Steub. R. R. Co., 31 Pa. 489; Miller v. Hanover Junct. & Sus. R. R. Co., 87 Pa. 95; Altoona Milk Co. v. Armstrong, 38 Pa. Superior Ct. 350; Dettra v. Kestner, 147 Pa. 566; Braddock Elec. Ry. Co. v. Bily, 11 Pa. Superior Ct. 144.

When the subscription is absolute, the subscriber cannot be permitted to set up a secret parol arrangement, perhaps with some unauthorized agent, by which he may be released from his subscription while his fellow subscribers continue to be bound: Miller v. R. R. Co., 87 Pa. 95; McCarty v. R. R. Co., 87 Pa. 332.

452    HARVEY, Appellant, *v.* WEITZENKORN.

*Joseph D. Coons*, for appellee.

OPINION BY MR. JUSTICE POTTER, July 6, 1911:

The appellant here alleges that the court below erred in discharging a rule for judgment for want of a sufficient affidavit of defense. The action was assumpsit to recover the amount of a subscription to capital stock. In his affidavit of defense, the defendant alleged that his subscription was conditional, and was made under a collateral agreement, by which he was allowed three months time in which to decide whether he would take the stock or not. Neither the statement of claim nor the affidavit of defense makes it clear whether the company had been incorporated at the time the subscription was taken. While our cases seem to make a distinction between conditional subscriptions to the capital stock of a corporation made before incorporation, and those made afterwards, yet the rights of cosubscribers are not to be injuriously affected by any secret agreement. Where other subscriptions are made upon the faith of a signature, it would be unjust to permit a secret arrangement to prevail. See Miller v. Hanover Junction R. R. Co., 87 Pa. 95. This case was cited in Moore v. R. R. Co., 94 Pa. 324, where it was said (p. 328): "the defendant Miller, set up a secret parol condition in order to defeat his subscription, but it was held that he could not be permitted so to do, on the ground that it would be unjust and a fraud upon his cosubscribers to permit him, on such grounds, to escape responsibility and thus throw upon them an additional burden." See also Phila. & Del. County R. R. Co. v. Conway, 177 Pa. 364; Marles Carved Moulding Co. v. Stulb, 215 Pa. 91. In Real Estate Trust Co. v. Manufacturing Co., 223 Pa. 350, it was held that a subscriber to the stock of a corporation could set up a secret parol agreement in defense to an action by the assignee of the company, to recover the amount of the subscription, only because (p. 356) under the terms of the subscription agreement, if he should be re-

lieved of liability, all the other subscribers would also be released.

Under these and other general authorities which might be cited, the right of the defendant to successfully set up a collateral agreement seems doubtful. But in his affidavit of defense he goes further and avers that after he had declined to take the stock, and while the company was still a solvent, going concern, it canceled his subscription. The general rule is that "A corporation may release a subscriber so far as to estop it and its assignee in insolvency from suing thereon:" 4 Thompson on Corporations (2d ed., 1909), sec. 3869. "A subscription contract, like any other contract, may be waived, canceled or dissolved by the mutual consent of all the parties interested. The interested parties are the subscriber himself, the other stockholders, and the corporate creditors existing at the time of the cancellation:" 1 Cook on Corporations (6th ed., 1908), sec. 168. "Such cancellations are good when permitted by the governing statute, where there are no creditors and provided all the stockholders assent:" 10 Cyc. 452.

The affidavit is not as specific as it might be, in setting out the facts as to the alleged cancellation, and does not set out the manner in which it was done; but it does aver on information and belief, that the corporation "by its constituted authorities" canceled the subscription. An order discharging a rule for judgment for want of a sufficient affidavit of defense will not be reversed, except where a pure question of law is raised and clear error has been committed: Wilson v. Trust Co., 225 Pa. 143, and cases there cited.

The present case is by no means so clear as to warrant us in reversing the order of the court below. The specification of error is overruled, and the judgment is affirmed.